ITALIAN FURNITURE FRAME CORP. ET AL. *v.* UNITED STATES

**No. 4588.**—Invoices dated Milan, Italy, August 20, 1935, etc.
Certified August 28, 1935, etc.
Entered at New York September 10, 1935, etc.
Entry No. 726706, etc.

(Decided June 2, 1939)

*Siegel & Mandell (Samuel T. Siegel* of counsel) for the plaintiffs.
*Webster J. Oliver,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the defendant.

McCLELLAND, Presiding Judge: After having been submitted on the record made, these appeals were restored to the docket on October 21, 1938, for the reasons stated in the following memorandum:

The record under consideration shows that it covers sixty-three appeals to reappraisement from values found by the United States appraiser at the port of New York on knocked-down furniture frames imported from Italy during the period between the latter part of 1934 and December 1936. Appraisement was based on cost of production, which is defined in section 402 (f) of the Tariff Act of 1930, and the contention of the plaintiffs is that the appraisements made on that basis were erroneous for the reason that at the time that each of the shipments involved was exported there existed in the markets of Italy an export value for such or similar merchandise. We start out, therefore, with the proposition of law that if there did exist an export value for such or similar merchandise as claimed by the plaintiffs, resort could not lawfully have been made by the appraiser to cost of production.

All of the appeals before me save one involve importations from a shipper known as Industria Sediame per Esportazione. The single exception is reappraisement 117384–A, the shipper in which case appears to be Angelo Belloni. There are numerous items involved, ranging from frames for small footstools to frames for sets comprising two or more pieces.

It is evident from the record that the appraiser's finding of cost of production was based upon reports made by Treasury representatives, attachés, and customs agents located abroad. In the main these reports deal with matters relating to the elements that go to make up cost of production, but with regard to the existence or absence of foreign or export value of such or similar merchandise the following appears in a report dated March 15, 1936, signed by N. Paterniti, Treasury representative, which was received in evidence as Exhibit 36:

The records show that definite similarity, for foreign value purposes, of ISE's (the exporter's) furniture with that shipped by other manufacturers cannot be established, which conditions are still unchanged.

If, however, precise similarity cannot be established, it is quite possible to arrive at intelligible production cost and value comparisons, and in this connection I chose some of ISE's items (photographs) representative of the usual merchandise shipped and placed them under the technical observation of the other shippers, who made cost and value comparisons with corresponding items of furniture shipped by them. These comparisons, which were made in collaboration with the respective company's carvers and other technicians, gave in each particular instance the undisputed result that for much richer and costly items the ISE invoiced prices are considerably lower than those of other shippers.

In various other reports, notably those received in evidence as Exhibits 40 and 41, made at later dates in 1936 and 1937 the foregoing is referred to às representing the conditions as of the time of such reports.

In the first (from the standpoint of date) of the reports received in evidence, which was made by Mr. Paterniti under date of January 2, 1935 (Exhibit 33), I find the following:

Lately, various companies in the Meda-Seveso district, *manufacturing furniture similar to that turned out by Industria Sediame Esportazione*, have presented strong complaints to the effect that the prices as invoiced by the latter company to the New York house did not even represent the full net cost of production of the wood and labor. [Italics mine.]

Two witnesses, both officers of firms engaged in the business of importing knocked-down furniture frames of the type here involved from Italy, testified on behalf of the plaintiffs at the hearing of these appeals that they had imported from manufacturers other than the shippers herein frames such as or similar to those here involved during the period when the exportations of the shipments in issue were made.

Numerous frames of sofas, armchairs, footstools, etc., claimed to have been included in the importations at bar were offered by counsel for the plaintiffs and received in evidence without objection on the part of counsel for the Government as exhibits in the case. Two pieces, the frame of a side chair and the frame of an armchair, were produced by the witness Glazeroff and were later marked Illustrative Exhibits B and C. These, the witness testified, had been purchased from a manufacturer named Maderna de Gaetano in Italy during the period covered by the importations in issue, and upon being asked to examine the exhibits taken from the importations and to state which, if any, were similar to Illustrative Exhibits B and C, the witness stated that Illustrative Exhibit B was similar to Exhibit 21 and Illustrative Exhibit C was similar to Exhibit 22. A physical examination by the court leads to the same conclusion. There are some differences, it is true, between the exhibits, but in the court's opinion, based upon the record and the examination referred to, they are not such as would preclude the chairs from being considered similar for tariff purposes. The witness produced the invoices covering the shipments of Illustrative Exhibits B and C, which were received in evidence over the objection of counsel for the Government as Exhibit 29.

Witness Richter produced two footstools, which were marked Illustrative Exhibits 30 and 31, and which he testified had been imported by his company from Maderna de Gaetano during the period covered by the importations in issue. He likewise produced the invoice covering his importation of Exhibits 30 and 31. Upon being asked to examine the exhibits taken from the importations herein and indicate which, if any, compared with Illustrative Exhibits 30 and 31, the witness stated that Exhibits 14 and 15 were "about the same." Examination of the exhibits discloses a close similarity as in the case of Exhibits 21 and 22 and Illustrative Exhibits B and C.

The president of the importing corporation, Louis Maslow, identified various samples which were received in evidence without objection as Exhibits 14 to 22 as representing certain of the frames in issue. This witness also produced five samples

which were marked Illustrative Exhibits 23 to 27, apparently without objection, and which he testified were frames he had purchased from Mauri Carlo, a manufacturer of furniture frames in Italy, during the year 1936. From an examination by the court Illustrative Exhibit 23 appears to be similar to Exhibit 16; Illustrative Exhibit 24 appears to be similar to Exhibit 14 and also to Illustrative Exhibit 31, hereinbefore referred to; Illustrative Exhibit 25 appears to be similar to Exhibit 15 and also to Illustrative Exhibit 30, hereinbefore referred to; Illustrative Exhibit 26 appears to be similar to Exhibit 20; and Illustrative Exhibit 27 appears to be similar to Exhibit 19. The witness' testimony as to the origin of Illustrative Exhibits 23 to 27 stands uncontradicted.

Supplementing the oral testimony of these witnesses is the affidavit of Mauri Carlo that he had sold and shipped to the plaintiffs and to the firm in which the witness Richter was a partner, footstools under his item numbers 1001, 1003, and 1004, and that these item numbers always represented the same merchandise. Mr. Maslow testified that he purchased Illustrative Exhibit 23 from Carlo as item 1001, Illustrative Exhibit 24 as item 1003, and Illustrative Exhibit 25 as item 1004.

There is evidence in the record which shows that frames such as or similar to those here involved are not generally sold for home consumption in Italy but are almost exclusively made up for sale and exportation to the United States.

Upon review of the entire record I am convinced that it has been established by the plaintiffs that frames such as or similar to those in issue were sold during the period within which the exportations in issue took place to various purchasers for export to the United States, but I find the evidence wholly insufficient to show—

* * * the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise [was] freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It is true that as to one item, a little footstool, three witnesses for the importers testified that they had each paid 55 to 65 cents therefor, but there is nothing to indicate what that price included, whether it was an f. o. b. price or a c. i. f. price, and in either case, notwithstanding that the three witnesses had imported that article or articles similar to it at the same price could it be reasonably accepted as evidence that the great number of larger pieces, some of which were in sets, were invoiced and entered at the value or price contemplated by section 402 (d), *supra.*

It is therefore manifest that further evidence is required before export value of the merchandise, as that value is defined in section 402 (d), *supra,* may be found to have been established.

Inasmuch as it is not disputed that merchandise such as or similar to that in issue was not offered for sale or sold within the United States in the condition as imported during the period covered by the exportations involved, appraisement cannot be made on the basis of United States value. Cost of production cannot be resorted to until it is demonstrated that export value cannot be ascertained. I have therefore concluded to restore the cases to my January docket for the purpose of giving the parties an opportunity to present further evidence with a view of showing whether export value, as defined in the statute, existed on the respective dates of exportation, or in the absence of such value, what the cost of production, as defined in the statute, of the involved merchandise was on such dates.

When the appeals came on for hearing on January 9, 1939, they were again submitted, without any additional proof on the part of either the plaintiff or the defendant, but on January 31, 1939, counsel for the parties filed a stipulation that the said submission be set aside "and that a rehearing be granted for the submission of the following additional evidence offered in behalf of the defendant," such additional evidence consisting of eight separate reports made by D. J. DeLagrave, acting supervising Treasury attaché at Milan, Italy. It was provided in the stipulation that the plaintiffs might file written objections to the reports and an exception was to be allowed to the plaintiffs if the said reports were admitted in evidence and to the defendant if they were excluded, and the case was again submitted.

Plaintiffs' objections to the admission of the reports were filed on February 17, 1939, and due consideration has been given thereto. My conclusion is that the objections go to the weight and not to the admissibility of the reports and therefore should be overruled and the reports admitted, an exception in each instance being allowed to the plaintiffs in harmony with the stipulation. The reports will be marked Exhibits 42 to 49, inclusive.

Exhibits 42 to 47, inclusive, are reports of investigations made by a Treasury representative among furniture manufacturers and exporters located in the district in Italy whence the furniture frames in issue were exported. In each case, it was found by the Treasury representative that the manufacturer interviewed made only a few items which either he or the Treasury representative considered to be similar to those made by the shipper of the frames in issue. In some instances comparisons are made between the prices obtained for some of the items produced by the manufacturer interviewed and the value shown in the invoices of the shipper in this case for what are claimed to be similar items, and in each instance the former was higher than the latter.

In my view, however, such reports are entitled to no weight in the determination of the question of whether an export value for the merchandise in issue existed at the time of exportation thereof for the reason that the basis of the alleged similarity or dissimilarity is not sufficiently shown.

Exhibit 48 is a report of an investigation made at the place of business of Carlo Mauri, a manufacturer of furniture frames from whom the president of the importing corporation in this case testified the plaintiff had purchased frames similar to those in issue, samples of which were received in evidence as Illustrative Exhibits 23 to 27, inclusive.

Referring, among other things, to Mauri's item 70, the sample of which was received as Collective Illustrative Exhibit 26, and to

Mauri's item 73, the sample of which was received as Illustrative Exhibit 27, the Treasury representative reports that a special shipment including those items was made up by Mauri—

from patterns furnished by and belonging to Mr. Maslow [the president of the importing corporation], who requested Mauri to use his, Maslow's assemblers and carvers, so that the cost would be reduced to a minimum. The quality of the wood and work was low.

The Treasury representative further reports:

I was informed by Mr. Mauri that Mr. Maslow caused him, Mauri, to manufacture this shipment for the sole object of creating fictitious market value evidence.

Mr. Maslow, in fact, did not leave Mauri free to make his price, but furnished him the patterns and the workers with whom he, Maslow, had arranged labor costs himself.

The least that may be said, in view of the foregoing, is that the evidence which plaintiffs offered with respect to the export value of merchandise imported from Mauri during the period covered by the exportations of the goods in issue has been successfully controverted.

The only other competent evidence offered by plaintiffs with respect to export value of frames such as or similar to those in issue is that contained in Exhibit 29, a consular invoice dated Seveso, Milan, Italy, September 5, 1935, of merchandise shipped by the firm Fratelli Maderna di Gaetano to the Period Frame Co. of New York. The only merchandise covered thereby which was connected with the merchandise in issue was items 2076 and 3056. A careful check of the dates of exportation of the merchandise covered by these appeals shows, however, that no items shown to be similar to items 2076 and 3056 were exported at the time covered by the invoice above referred to, so that Exhibit 29 has no evidentiary value as establishing the prices at which merchandise such as or similar to that here involved was being sold at the time of exportation thereof.

Section 501 of the Tariff Act of 1930 provides that—

The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

While I am satisfied from the evidence that plaintiffs have succeeded in establishing that the proper basis of value for the merchandise involved is the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, I am convinced that plaintiffs have not met the burden resting upon them of establishing by a preponderance of competent, material, and relevant evidence what such values were on the respective dates of exportation of the items involved.

In view of the statutory presumption quoted above I have no other course than to find that the export value, as that value is defined in

section 402 (d) of the Tariff Act of 1930, was the proper basis of value for the merchandise in issue, and that such value for each of the items involved at the time of exportation thereof was the appraised value.

Judgment will issue accordingly.